# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNDERWRITERS AT LLOYDS**
**f/u/b/o TECH DATA CORPORATION,**

    **Plaintiff,**

v.                                                  **CASE NO. 8:07-CV-212-T-EAJ**

**FedEx FREIGHT SYSTEM, INC.,**

    **Defendant.**
_____/

## ORDER

Before the court are Defendant FedEx's **Motion for Judgment on the Pleadings** (Dkt. 17) and **Plaintiff's Response**, in which Plaintiff cross moves for judgment on the pleadings (Dkt. 18). The court heard oral argument on March 6, 2008. After consideration, the motions are denied.

**I.**     **Background**

Plaintiff Underwriters at Lloyds ("Lloyds") is a foreign insurance association headquartered in London, England. (Compl. ¶ 2) Lloyds insures Tech Data Corporation ("Tech Data") under a cargo liability insurance policy that provides insurance coverage for cargo owners. (Compl. ¶ 3) The policy covers losses and damages to cargo that Tech Data owns or to cargo owned by others to whom Tech Data may be liable in the event of a loss. (Compl. ¶ 3) Tech Data maintains its principal place of business in Clearwater, Florida. (Compl. ¶ 5) Defendant FedEx Freight Corporation[1] ("FedEx") is a Delaware corporation with its principle place of business in Memphis, Tennessee. (Answer ¶ 4)

---

[1] Defendant states in its answer that due to corporate restructuring the proper defendant is FedEx Freight Corporation as opposed to FedEx Freight System. (Answer ¶ 4)

Lloyd's brings one claim against FedEx for breach of contract arising from an Agreement for Transportation Services ("the Agreement") between Tech Data and FedEx for the purchase and sale of shipping services. (Compl. at 2) Specifically, Lloyd's claims that FedEx breached Schedule D of the contract, which sets forth security measures that FedEx is required to undertake to protect Tech Data's shipments. (Compl. Attach. 2 at 9). Paragraph 9 of the Agreement contains a liquidated damages clause that applies in the event that goods are lost or damaged because of FedEx's failure to comply with Schedule D. (Compl. Attach. 2 at 2).

FedEx's answer asserts six affirmative defenses: (1) the complaint fails to state a claim upon which relief may be granted; (2) the illegal acts of third parties directly and proximately caused the alleged loss; (3) the negligent acts of third parties directly and proximately caused the alleged loss; (4) theft caused the alleged loss but FedEx exercised due diligence to prevent and avoid the loss; (5) Tech Data failed to comply with the terms and conditions of the Agreement and any amendment or addendum thereto; and (6) Tech Data failed to name the proper defendant. (Answer at 3)

Lloyds originally sued FedEx in the Pinellas County Circuit Court; FedEx removed on February 1, 2007 (Dkt. 1). The parties agree that venue is proper in the Middle District of Florida, Tampa Division under paragraph 12H of the Agreement. (Compl. ¶ 6; Answer ¶ 6)

**II.   Undisputed Facts**

1. On November 4, 2002, FedEx and Tech Data entered into the Agreement. (Compl. ¶ 7; Dkt. 17 Ex. 1; Answer ¶ 7)

2. In Paragraph 6 of the Agreement, FedEx agreed to provide the security measures set forth in Schedule D for the protection of Tech Data's shipments. (Compl. Attach. 2 at 1-2)

3. In Paragraph 9 of the Agreement, FedEx agreed that Tech Data would be entitled to

    liquidated damages if the loss of or damage to a shipment was due to FedEx's failure to comply with Schedule D. (Compl. Attach. 2 at 2)

4. On January 10, 2006, a straight bill of lading (Bill of Lading no. 098130981-4) was issued for the transport of computer software ("the Goods") from Fontana, California to Newark, California[2] under the Agreement. (Compl. ¶¶ 6, 7; Answer ¶¶ 6, 7; Dkt. 17 at 1)

5. The Goods were to be delivered to Xtraplus Corporation but never arrived. (Compl. ¶ 8, Answer ¶ 8)

6. Tech Data and Lloyd's valued the Goods at $83,820. (Compl. ¶ 10)

7. FedEx refused to indemnify Tech Data for the loss of the Goods because according to FedEx, it has no obligation to indemnify Tech Data. (Compl. ¶ 11, Answer ¶ 11)

8. Tech Data submitted the claim of loss to Lloyd's. (Compl. ¶ 11)

9. Lloyd's accepted Tech Data's claim of loss under the cargo liability insurance policy and paid Tech Data $73,820, which is the amount of the loss less Tech Data's $10,000 deductible. (Compl. ¶ 12)

10. Lloyd's sues FedEx under a subrogation theory to recover its payment to Tech Data as well as Tech Data's deductible interest. (Compl. ¶ 13)

11. Paragraph 6 of the Agreement provides:

    <u>Security</u>. In order to protect the security of the goods entrusted to Carrier by Shipper or third parties pursuant to this Agreement, Carrier agrees to provide the minimum levels of security set forth in Schedule D. Carrier shall permit on-site security reviews by Shipper and other authorized representatives of Shipper at any facility, and upon request by Shipper, Carrier's security personnel shall assist Shipper at

---

[2] The complaint alleges that the Goods were shipped from Fontana, California to Newark, New Jersey. The parties clarified at the hearing that Newark, California was the intended destination but agreed that this fact is immaterial to the issue before the court.

       Carrier's expense in arranging and performing security reviews of Carrier's facilities, agents and subcontractors.

12.     Paragraph 9 of the Agreement provides, in pertinent part:

       <u>Loss and Damage to Goods</u>.  Except as provided in this Section 9, Carrier shall be liable as at common law for any loss, damage or delay to any of the property transported under this Agreement, except as hereinafter provided. In the event of loss of or damage to property in the transportation of goods between Shipper and a third party, the measure of the loss or damage shall be Five dollars ($5.00) per pound, per article applicable to the kind and quantity of the commodities in question, subject to a maximum of One Hundred Fifty Thousand Dollars ($150,000) per occurrence. . . . Notwithstanding anything contained herein to the contrary, in the event of loss or damage to goods occurring in circumstances in which there was a failure to comply with any of the security requirements of Schedule D, Shipper shall be entitled to recover from Carrier as liquidated damages and not as a penalty, a sum equal to 100% of the invoice value of the affected goods, subject to a maximum of Two Hundred Fifty Thousand Dollars ($250,000) per occurrence.

13.     Schedule D ("Carrier Security Requirements") provides, in pertinent part:

       In-Transit: All trailers will be locked during transit.  The driver must inspect locks anytime the vehicle has been left unattended (out of virtual sight) and before the driver proceeds en route.  Any evidence of broken locks must be reported within 48 hours to Carrier and to the appropriate Customer party. At each transit point, freight will be inspected for signs of tampering, damage or loss. Counts will be reconciled and exceptions noted with any reporting of discrepancies to Carrier and to the appropriate Customer party within 48 hours.

       . . .

       Secondary Device Centers: Goods should not be delivered to Secondary Service Centers for final delivery unless authorized personnel staff the Secondary Service Centers.  If goods are delivered to a Secondary Service Center, and authorized personnel to oversee protection of Customer assets are not present in the facility, Carrier shall at a minimum, meet the following asset protection procedures: Dropped trailers containing Customer assets must be kingpin locked with trailer doors padlocked and trailers backed against terminal doors or trailers must be locked, and backed door to door against another trailer and both trailers must be kingpin locked. Customer produce may be placed inside the terminal facility in lieu of the above requirements provided the facility is locked and controlled with electronic intrusion alarms.

       . . .

>   Proof of Delivery: Proof of Delivery (P.O.D.) is required to be provided to Customer in any reported shortage, damage or loss. P.O.D. must be received not later than four business days after the request.

14. Plaintiff's breach of contract claim is premised on FedEx's alleged failure to comply with Schedule D and the resulting loss of the Goods. (Compl. ¶¶ 18, 19)

15. Plaintiff's complaint seeks damages under the liquidated damages provision of the contract. (Compl. ¶¶ 18-20)

**III.     Legal Standard**

After the close of the pleadings, any party may move for judgment on the pleadings if trial is not delayed. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where the moving party clearly establishes that the parties dispute no material facts and that the moving party is entitled to judgment as a matter of law. Scott v. Taylor, 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted). The court must accept the allegations in the complaint as true and view them in the light most favorable to the non-moving party. See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (citations omitted).

A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted. See id. Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S. Ct. 1955 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In abrogating Conley, however, the Twombly Court stated that to survive a motion to dismiss a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its

face." Twombly, 127 S. Ct. at 1974. Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, a dispositive legal issue exists that precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989) (citations omitted).

## IV. Discussion

Accepting the allegations of fact in Plaintiff's complaint as true, FedEx received the Goods pursuant to Bill of Lading 098130981-4 and picked up the shipment in Fontana, California at 10:52 p.m. on January 10, 2006. The Goods never arrived at their intended destination and FedEx failed to otherwise determine what happened to the Goods.

Paragraph 9 of the Agreement sets forth three measures of damages available to Tech Data in the event that goods are lost (or damaged) in shipping. The contract first provides that FedEx is liable at common law.[3] Next, a "limitation of liability" clause provides that FedEx is liable for only $5.00 per pound of the goods (up to a maximum of $150,000 per occurrence) if the goods are lost or damaged "in the transportation of goods between [Tech Data] and a third party." (Compl. Attach. 2 at 2). And finally, the liquidated damages clause awards Tech Data 100% of the invoice value of the goods (subject to a $250,000 limitation) if the loss results from FedEx's failure to comply with the security requirements in Schedule D.

---

[3] The Agreement specifically applies Florida law to the provisions of the contract and the parties agree that Florida law mirrors the federal common law relating to interstate carriers. (Compl. Attach. 2 at 5) Under Florida law, the elements of an action for breach of contract are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach. Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citation omitted). FedEx does not dispute that the complaint alleges the requisite elements to state a claim for breach of contract.

Because Plaintiff's claim is premised on FedEx's alleged breach of Schedule D, FedEx argues that it is entitled to judgment as a matter of law in that the liquidated damages clause is an unenforceable penalty provision under Florida law. FedEx admits, however, that the Goods were lost (and to this day have not been found). Thus, FedEx's position is that: (1) the unenforceable liquidated damages clause renders Schedule D inapplicable; and (2) because the limitation of liability clause applies, Plaintiff is entitled to only $525.00 in damages for the lost goods. Essentially, FedEx agrees that the court should enter judgment for Plaintiff if the court finds that the contract limits Tech Data's damages to $525.00; otherwise, FedEx denies that it breached the contract.

Plaintiff disagrees with FedEx that its damages are limited to $525.00 even if the court finds the liquidated damages clause unenforceable. Plaintiff maintains that the limitation of liability clause applies only when shipped goods are in the custody of a third party (and not FedEx). Thus, Plaintiff's position is that if the liquidated damages clause is unenforceable, it is still entitled to the full value of the goods under common law carrier liability.[4]

The parties agree that the interpretation of the liquidated damages clause is a pure question of law and attempt to avoid further litigation (and the expenditure of resources) by asking the court to determine a potentially dispositive issue. Had the record been adequately developed on this issue, the court could recognize its "affirmative duty . . . to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." Fed. R. Civ. P. 1 advisory committee's note; see Fed.

---

[4] Plaintiff argues that FedEx's failure to raise the invalidity of the liquidated damages provision as an affirmative defense precludes FedEx from relying on that defense in a motion for judgment on the pleadings. The court finds this argument unpersuasive as Plaintiff has not shown that it was surprised or prejudiced by FedEx's argument.

R. Civ. P. 1 (construing the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action). But the parties put the cart before the horse in this case because disputed issues of material fact remain. Thus, the damages issue is not yet ripe for determination.

FedEx, as the moving party, has the burden of showing that the liquidated damages clause is unenforceable as a matter of law. Under Florida law, the court will uphold a liquidated damages provision when two conditions are met: (1) the damages must not be readily ascertainable at the time of contract formation, and (2) the amount agreed to be forfeited must not be grossly disproportionate to any damages that might reasonably be expected to flow from the breach. Lefemine v. Baron, 573 So. 2d 326, 328 (Fla. 1991). However, for the court to determine whether the liquidated damages provision is enforceable, either Plaintiff must prove (or FedEx must concede) that FedEx breached Schedule D. Although FedEx concedes that the Goods are lost, FedEx denies any breach of Schedule D, and no record facts exist that would allow the court to determine whether FedEx failed to comply with Schedule D. FedEx cannot simply choose to concede breach only if the court agrees with its interpretation of the damages clause; whether FedEx breached the contract is independent of the amount of damages resulting from the alleged breach. Thus, the court finds that reaching the damages issue before breach has been established is premature.

The court also finds unpersuasive FedEx's argument that the unenforceable liquidated damages clause completely voids any applicability of Schedule D under the contract. Contrary to FedEx's argument, the liquidated damages clause sets forth the damages flowing from a breach of Schedule D; Schedule D is not, however, effective only if the liquidated damages clause is valid. Even if the court struck the liquidated damages clause as a penalty, Schedule D is not automatically

void. Rather, a breach of Schedule D could still result in damages other than the sum set forth in the liquidated damages clause. FedEx would not automatically be relieved of all liability for breach solely because of an invalid liquidated damages clause.

Further, even assuming the liquidated damages clause is unenforceable, FedEx concedes that the Goods are lost and that Plaintiff is due some measure of damages. So the question is less about whether the liquidated damages clause is enforceable and more about whether the limitation of liability provision applies in determining the amount of damages due Plaintiff. The specific provision provides that "[i]n the event of loss of or damage to property in the transportation of goods *between Shipper and a third party*, the measure of the loss or damage shall be Five dollars ($5.00) per pound . . . ." (Compl. Attach. 2 at 2) (emphasis added).

The parties disagree as to the meaning of a "third party." Plaintiff maintains that "third party" means a third party carrier (not FedEx) who is in possession of the shipped goods.[5] FedEx contends, however, that "third party" means the intended recipient of the shipment.[6] Under either interpretation, absent from the pleadings is any fact about who had custody of the Goods during shipment. Indeed, Plaintiff conceded at the hearing that the issues in its cross-motion are more appropriately addressed on summary judgment because the pleadings fail to address the limitation of liability clause. Thus, it is premature for court to determine the effect of the limitation of liability clause when that issue is unreflected in the pleadings and factually undeveloped at this stage.

---

[5] Plaintiff contends, for example, that the limitation of liability clause would apply in a situation where FedEx uses a third party carrier's warehouse to store packages and the goods are lost or damaged while in the custody of the third party.

[6] Under FedEx's interpretation, Tech Data would always be limited to damages of $5.00 per pound if FedEx simply admits that it lost the goods (as opposed to admitting that it breached Schedule D).

9

In deciding a Rule 12(c) motion, "the [c]ourt is confined to a review of the pleadings, must accept the pleaded facts as true, and must resolve any factual issues in a manner favorable to the non-movant." Smith v. Avino, 866 F. Supp. 1399, 1402 (S.D. Fla. 1994) (discussing the standard for a Rule 12(b)(6) dismissal). Here, the pleadings are insufficient to allow the court to resolve the factual and legal issues in either party's favor.

**V.**   **Conclusion**

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)   Defendant FedEx's **Motion for Judgment on the Pleadings** (Dkt. 17) is **DENIED**; and

(2)   Plaintiff's cross-motion for judgment on the pleadings (Dkt. 18) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on this 19th day of March, 2008.

_____
ELIZABETH A JENKINS
United States Magistrate Judge