**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNDERWRITERS AT LLOYDS**
**f/u/b/o TECH DATA CORPORATION,**

      **Plaintiff,**

**v.**                                                                                  **CASE NO. 8:07-CV-212-T-EAJ**

**FedEx FREIGHT SYSTEM, INC.,**

      **Defendant.**

_____/

### ORDER

Before the court are **Plaintiff's Motion for Summary Judgment** (Dkt. 34), **Defendant's Motion for Summary Judgment** (Dkt. 35), **Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Motion to Strike Portions of the Affidavit of Michael Willis** (Dkt. 36), and **Defendant's Response to Plaintiff's Motion for Summary Judgment** (Dkt. 37), and **Defendant's Response in Opposition to Plaintiffs' Motion to Strike** (Dkt. 40).[1]

**I.**     **Background**

Plaintiff Underwriters at Lloyds ("Lloyds") is a foreign insurance association headquartered in London, England. (Compl. ¶ 2) Lloyds insures Tech Data Corporation ("Tech Data") under a cargo liability insurance policy that provides insurance coverage for cargo owners.  (Compl. ¶ 3) The policy covers losses and damages to cargo that Tech Data owns or to cargo owned by others to whom Tech Data may be liable in the event of a loss. (Compl. ¶ 3) Tech Data maintains its principal place

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 22).

of business in Clearwater, Florida. (Compl. ¶ 5) Defendant FedEx Freight Corporation[2] ("FedEx") is a Delaware corporation with its principle place of business in Memphis, Tennessee. (Answer ¶ 4)

Lloyd's brings one claim against FedEx for breach of contract arising from an Agreement for Transportation Services ("the Agreement") between Tech Data and FedEx for the purchase and sale of shipping services. (Compl. at 2) Specifically, Lloyd's claims that FedEx breached Schedule D of the contract, which sets forth security measures that FedEx is required to undertake to protect Tech Data's shipments. (Compl. Attach. 2 at 9).  Paragraph 9 of the Agreement contains a liquidated damages clause that applies in the event that goods are lost or damaged because of FedEx's failure to comply with Schedule D. (Compl. Attach. 2 at 2, ¶ 9).

Lloyds originally sued FedEx in the Pinellas County Circuit Court; FedEx removed on February 1, 2007 (Dkt. 1). The parties agree that venue is proper in the Middle District of Florida, Tampa Division under paragraph 12H of the Agreement. (Compl. ¶ 6; Answer ¶ 6) The parties cross-moved for judgment on the pleadings; the court denied those motions in an order dated March 19, 2008.  Both parties now move for summary judgment and submit that the only issue for the court is the amount of damages due Plaintiff under the Agreement.

## II.    Plaintiff's Motion to Strike

Plaintiff moves to strike portions of the Affidavit of Michael Willis ("Willis Affidavit"), FedEx's Exhibit 2 to its Motion for Summary Judgment (Dkt. 35, Attach. 3), on the grounds that the affidavit is not based on personal knowledge, includes inadmissible hearsay and conclusory statements, and lacks supporting documents to provide foundation for the averments (Dkt. 36 at 4).

---

[2] Defendant states in its answer that due to corporate restructuring the proper defendant is FedEx Freight Corporation as opposed to FedEx Freight System. (Answer ¶ 4)

2

Specifically, Plaintiff contends that paragraphs 6, 7, 8, 9, 10, 14, and 15 of the Affidavit should be stricken because the Affidavit fails to establish that Mr. Willis was involved in any of the negotiations that resulted in the Agreement between Plaintiff and FedEx and thus he cannot testify as to the parties' motivation or intent.

Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). FedEx responds that the affidavit is based on Mr. Willis' personal knowledge, observations, and business records kept in the ordinary course of business, and that within the purview of Mr. Willis' job duties he was able to see, hear, or otherwise perceive all of the attested facts regarding the Agreement between Plaintiff and FedEx (Dkt. 40).

"[A]n affidavit must be stricken when it is a conclusory argument, rather than a statement of fact, or when the affidavit is not based on personal knowledge." Pashoian v. GTE Directories, 208 F. Supp. 2d 1293, 1297 (M.D. Fla. 2002) (citation omitted). An affidavit "based on nothing more than information and belief" is insufficient to survive a motion to strike. Id. In addition, inadmissible hearsay contained in an affidavit may not be considered on summary judgment unless it can be reduced to admissible form at trial. Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted). The court may strike inadmissible portions of an affidavit and consider the rest. Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1031 (M.D. Fla. 2000) (citation omitted).

The Willis Affidavit contains a blanket statement that the affidavit is based on Willis' "personal knowledge, observations and business records kept in the ordinary course of business"

(Dkt. 35, Attach. 3 at ¶ 1).  This type of blanket statement that an affidavit's contents are based on personal knowledge does not preclude a finding that portions of the affidavit are inadmissible.  See Williams v. Asplundh Tree Expert Co., No. 3:05-CV-479-J-33MCR, 2006 WL 1793551, *3 n.3 (M.D. Fla. June 28, 2006) (citation omitted).  In addition, averments prefaced with phrases such as "I am confident" or "I believe" should be stricken because they are based on belief rather than personal knowledge. See id.; Story, 120 F. Supp. 2d at 1030.

Having reviewed the parties' arguments and the Affidavit, Plaintiff's motion to strike is granted in part.  Paragraph 6 consists of Willis' testimony about FedEx's and Plaintiff's concessions during the course of negotiating the agreement (Dkt. 35, Attach. 3 at ¶ 6).  Although FedEx states in its response that "[a]s FedEx's agent, Mr. Willis was present during these negotiations, and is authorized and competent to testify as to these facts," (Dkt. 40 at 4), nothing in the Affidavit establishes that Mr. Willis was present during the negotiations that led to the Agreement between Plaintiff and FedEx.  As such, Paragraph 6 is not based on Mr. Willis' personal knowledge and is stricken.

Paragraph 7 is based on Mr. Willis' personal knowledge, garnered from his job duties and experience, of the shipping industry's and FedEx's custom and business practices in negotiating contracts. No portion of Paragraph 7 contains a "statement" or nonverbal conduct intended as an assertion. Thus, Paragraph 7 is devoid of hearsay, based on personal knowledge, and shall stand.

Paragraph 8, however, contains comments about whether the limitation of liability clause contained in the Agreement should be a "surprise" to FedEx or Tech Data. Although Mr. Willis may offer personal knowledge of FedEx's business practices, testimony as to the Agreement's contents through Plaintiff's eyes is based solely upon "information and belief" rather than personal

4

knowledge.  Paragraph 8 is therefore stricken.

Paragraphs 9 and 10 are not conclusory, do not contain hearsay, and are based on Mr. Willis'

personal knowledge.  Mr. Willis merely states facts observed in the course of his employment with

FedEx; the facts stated in Paragraph 10 are specifically based on FedEx's internal data control and

cargo loss records, which Mr. Willis attests are within the purview of his job responsibilities.

Paragraphs 9 and 10 shall stand.

Plaintiff claims that Paragraph 14 is conclusory, without foundation or personal knowledge,

and without supporting documentation. Mr. Willis states in Paragraph 14 that FedEx complied with

all of the security requirements of Schedule D and bases these observations on "[a]ll information in

FedEx files and from its employees, as it relates to this claim" (Dkt. 35, Attach. 3 at ¶ 14).  Earlier

in the Affidavit, Mr. Willis avers that "the claim that is the subject of this lawsuit fell within the

purview of my job responsibilities and I have personal knowledge of this claim, the file materials

associated with it, and its handling . . . ." (Id. at ¶ 4).  Paragraph 14 is therefore based on Mr. Willis'

personal knowledge of the claims file and the information he has reviewed as part of his

employment. Contrary to Plaintiff's assertion, FedEx has submitted documentary evidence about its

compliance with Schedule D as part of its motion for summary judgment.  Through its own evidence,

Plaintiff may be able to create a material factual dispute about whether FedEx complied with

Schedule D, but Paragraph 14 of the Willis Affidavit is valid.

Paragraph 15 reflects Mr. Willis' legal conclusion that Plaintiff should be limited to $5.00

per pound in damages under the limitation of liability clause. The parties concede that the

applicability of the limitation of liability clause to the facts of this case is a pure question of law.

FedEx offers no basis for Mr. Willis' qualifications to testify as to a legal conclusion; he is not an

attorney and FedEx has not tendered him as an expert. Accordingly, Paragraph 15 of the Affidavit is stricken as an impermissible legal conclusion.

Plaintiff's Motion to Strike portions of the Willis Affidavit is therefore granted to the extent that Paragraphs 6 and 8 are stricken as without personal knowledge and Paragraph 15 is stricken as an impermissible legal conclusion.  Plaintiff's Motion is otherwise denied.

## III.  Undisputed Facts

1.     On November 4, 2002, FedEx and Tech Data entered into the Agreement. (Compl. ¶ 7; Answer ¶ 7)

2.     In Paragraph 6 of the Agreement, FedEx agreed to provide the security measures set forth in Schedule D for the protection of Tech Data's shipments. (Compl. Attach. 2 at 1-2, ¶ 6)

3.     In Paragraph 9 of the Agreement, FedEx agreed that Tech Data would be entitled to liquidated damages if the loss of or damage to a shipment was due to FedEx's failure to comply with Schedule D. (Compl. Attach. 2 at 2, ¶ 9)

4.     On January 10, 2006, a straight bill of lading (Bill of Lading no. 098130981-4) was issued for the transport of computer software ("the Goods") from Fontana, California to Newark, California[3] under the Agreement. (Compl. ¶¶ 6, 7; Answer ¶¶ 6, 7)

5.     At 10:52 p.m. on January 10, 2006, FedEx acquired the Goods in Fontana, California.  (Dkt. 34, Ex. 6)

6.     At 11:33 p.m. on January 10, 2006, Trailer number 2867562 left FedEx's Fontana, California facility with the Goods and arrived at FedEx's San Jose, California facility on January 11,

---

[3] The complaint alleges that the Goods were shipped from Fontana, California to Newark, New Jersey. The parties previously clarified that Newark, California was the intended destination; that fact is immaterial to the issues presented in the motions.

2006 at 6:39 a.m. (Dkt. 34, Ex. 6)

7.      The Goods remained at the San Jose facility between 6:39 a.m. and 11:04 a.m. on January 11, 2006. (Dkt. 34, Ex. 6)

8.      Between 11:04 a.m. and 11:23 a.m., the Goods were loaded onto Trailer number 2859114. (Dkt. 34, Ex. 6)

9.      Trailer number 2859114 left the San Jose facility at 11:23 a.m. on January 11, 2006 to complete delivery of the Goods. (Dkt. 34, Ex. 6)

10.     During the delivery route the driver of Trailer 2859114 discovered that the Goods were missing and notified the dispatcher on duty. (Dkt. 34, Exs. 3, 4)

11.     The Goods were to be delivered to Xtraplus Corporation but never arrived. (Compl. ¶ 8, Answer ¶ 8)

12.     Tech Data and Lloyd's valued the Goods at $83,820; the invoice value of the Goods was $76,200. (Compl. ¶ 10; Dkt. 34, Ex. 5)

13.     FedEx refused to indemnify Tech Data for the loss of the Goods because according to FedEx, it has no obligation to indemnify Tech Data. (Compl. ¶ 11, Answer ¶ 11)

14.     Tech Data submitted the claim of loss to Lloyd's. (Compl. ¶ 11)

15.     Lloyd's accepted Tech Data's claim of loss under the cargo liability insurance policy and paid Tech Data $73,820, which is the amount of the loss less Tech Data's $10,000 deductible. (Compl. ¶ 12)

16.     Lloyd's sues FedEx under a subrogation theory to recover its payment to Tech Data as well as Tech Data's deductible interest. (Compl. ¶ 13)

17.     Paragraph 6 of the Agreement provides:

<u>Security</u>.  In order to protect the security of the goods entrusted to Carrier by Shipper or third parties pursuant to this Agreement, Carrier agrees to provide the minimum levels of security set forth in Schedule D. Carrier shall permit on-site security reviews by Shipper and other authorized representatives of Shipper at any facility, and upon request by Shipper, Carrier's security personnel shall assist Shipper at Carrier's expense in arranging and performing security reviews of Carrier's facilities, agents and subcontractors.

18.    Paragraph 9 of the Agreement provides, in pertinent part:

<u>Loss and Damage to Goods</u>.  Except as provided in this Section 9, Carrier shall be liable as at common law for any loss, damage or delay to any of the property transported under this Agreement, except as hereinafter provided. In the event of loss of or damage to property in the transportation of goods between Shipper and a third party, the measure of the loss or damage shall be Five dollars ($5.00) per pound, per article applicable to the kind and quantity of the commodities in question, subject to a maximum of One Hundred Fifty Thousand Dollars ($150,000) per occurrence. . . . Notwithstanding anything contained herein to the contrary, in the event of loss or damage to goods occurring in circumstances in which there was a failure to comply with any of the security requirements of Schedule D, Shipper shall be entitled to recover from Carrier as liquidated damages and not as a penalty, a sum equal to 100% of the invoice value of the affected goods, subject to a maximum of Two Hundred Fifty Thousand Dollars ($250,000) per occurrence.

19.    Schedule D ("Carrier Security Requirements") provides, in pertinent part:

Loading at Sending Location; Shipper Load and Count: . . . CARrier will verify seal integrity and count at first break point.  Any discrepancies or corrections must be reported to Customer within 48 hours.

.    .    .

In-Transit: All trailers will be locked during transit.  The driver must inspect locks anytime the vehicle has been left unattended (out of virtual sight) and before the driver proceeds en route.  Any evidence of broken locks must be reported within 48 hours to Carrier and to the appropriate Customer party. At each transit point, freight will be inspected for signs of tampering, damage or loss. Counts will be reconciled and exceptions noted with any reporting of discrepancies to Carrier and to the appropriate Customer party within 48 hours.

.    .    .

Secondary Device Centers: Goods should not be delivered to Secondary Service

Centers for final delivery unless authorized personnel staff the Secondary Service Centers.  If goods are delivered to a Secondary Service Center, and authorized personnel to oversee protection of Customer assets are not present in the facility, Carrier shall at a minimum, meet the following asset protection procedures: Dropped trailers containing Customer assets must be kingpin locked with trailer doors padlocked and trailers backed against terminal doors or trailers must be locked, and backed door to door against another trailer and both trailers must be kingpin locked. Customer produce may be placed inside the terminal facility in lieu of the above requirements provided the facility is locked and controlled with electronic intrusion alarms.

.     .     .

Proof of Delivery: Proof of Delivery (P.O.D.) is required to be provided to Customer in any reported shortage, damage or loss. P.O.D. must be received not later than four business days after the request.

20.     Plaintiff's breach of contract claim is premised on FedEx's alleged failure to comply with

Schedule D and the resulting loss of the Goods. (Compl. ¶¶ 18, 19)

21.     Plaintiff's complaint seeks damages under the liquidated damages provision of the contract.

(Compl. ¶¶ 18-20)

## IV.   **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). The moving party bears the burden of showing that no issue of material fact exists. Celotex

Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met this burden, the nonmoving

party must identify specific facts that raise a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under

the governing substantive law." <u>Beck v. Somerset Techs., Inc.</u>, 882 F.2d 993, 996 (5th Cir. 1989)

(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u> <u>Tipton v. Bergrohr</u>

<u>GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992)). In considering a summary judgment motion,

the court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

<u>Anderson</u>, 477 U.S. at 251-52.

The court must judge all evidence in the light most favorable to the nonmoving party and

must draw all justifiable inferences in the nonmoving party's favor. <u>Fernandez v. Bankers Nat'l Life</u>

<u>Ins. Co.</u>, 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted). However, the evidence must also

be viewed in light of the evidentiary burden of the respective parties under the substantive law of the

case. <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248). If a reasonable jury could find for the nonmoving party,

summary judgment is inappropriate. <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 324).

## V.    <u>Discussion</u>

Undisputed is that FedEx received the Goods pursuant to Bill of Lading 098130981-4 and

took possession of the shipment in Fontana, California on January 10, 2006.  The Goods never

arrived at their intended destination and FedEx failed to determine what happened to the Goods.

Paragraph 9 of the Agreement sets forth three measures of damages available to Tech Data

in the event that goods are lost (or damaged) in shipping.  The contract first provides that FedEx is

liable at common law.[4]  Next, a "limitation of liability" clause provides that FedEx is liable for only

---

[4] The Agreement specifically applies Florida law to the provisions of the contract and the
parties agree that Florida law mirrors the federal common law relating to interstate carriers. (Compl.
Attach. 2 at 5) Under Florida law, the elements of an action for breach of contract are: (1) the
existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach.
<u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citation omitted).  FedEx does

$5.00 per pound of the goods (up to a maximum of $150,000 per occurrence) if the goods are lost or damaged "in the transportation of goods between Shipper and a third party." (Compl. Attach. 2 at 2, ¶ 9). Finally, the liquidated damages clause awards Tech Data 100% of the invoice value of the goods (subject to a $250,000 limitation) if the loss results from FedEx's failure to comply with the security requirements in Schedule D.

FedEx argues that it is entitled to summary judgment because no evidence exists that FedEx breached Schedule D, and that even if Schedule D was breached the liquidated damages clause is an unenforceable penalty provision under Florida law. FedEx admits, however, that the Goods were lost and have never been recovered. Thus, FedEx's position is that: (1) the limitation of liability clause applies and entitles Plaintiff to only $525.00 in damages for the lost goods, (2) FedEx did not breach Schedule D, (2) even if FedEx breached Schedule D the liquidated damages clause is unenforceable and the proper measure of damages would be $525.00.

Plaintiff submits that the undisputed evidence shows that FedEx breached Schedule D and that the liquidated damages clause is enforceable. Plaintiff also disagrees with FedEx that Plaintiff's damages are limited to $525.00 under the limitation of liability clause and maintains that the clause is an unenforceable exculpatory clause under Florida law. Thus, Plaintiff's position is that even if FedEx did not breach Schedule D (or even if the court finds the liquidated damages provision unenforceable), Plaintiff is still entitled to the full value of the goods under common law carrier liability.

A.    <u>Limitation of Liability Clause</u>

_____

not dispute that the complaint alleges the requisite elements to state a claim for breach of contract. The only issue is the proper measure of damages and which contractual clause governs this issue.

FedEx concedes that the Goods are lost and that Plaintiff is due some measure of damages. First, the parties disagree as to whether the limitation of liability provision applies in determining the amount of damages due Plaintiff. The specific provision at issue provides that "[i]n the event of loss of or damage to property in the transportation of goods *between Shipper and a third party*, the measure of the loss or damage shall be Five dollars ($5.00) per pound . . . ." (Compl. Attach. 2 at 2, ¶ 9) (emphasis added).

According to Plaintiff, the limitation of liability clause is an inapplicable exculpatory clause under Florida law because the meaning of the clause is not absolutely clear (Dkt. 34 at 9). Plaintiff further argues that the clause has no application because the loss of the Goods occurred during transportation between the Carrier (FedEx) and a third party instead of during transportation between the Shipper (Tech Data) and a third party. Plaintiff contends that for the limitation of liability clause to apply, the loss had to occur during direct, uninterrupted transportation between Tech Data and its customer. Because the Goods incurred several "stops" at different FedEx facilities and were transferred several times to different trailers after leaving Tech Data, Plaintiff maintains that the loss of the Goods occurred during shipment between the Carrier (as opposed to the Shipper) and a third party, rendering the limitation of liability clause inapplicable (Dkt. 34 at 9-11).

FedEx responds that the limitation of liability clause is not an exculpatory clause, that the terms of the clause are unambiguous and should be given their plain meaning, and that Plaintiff's interpretation of the clause is fanciful and inconsistent (Dkt. 37 at 4-10). According to FedEx, the common understanding of the clause is straightforward and Plaintiff's position is "absurd" that the transfer of the Goods between facilities and trailers changes the liability to FedEx (Dkt. 37 at 9-10). FedEx further responds that its "use of service centers to consolidate, route, transfer shipments to

different trailers, and otherwise provide for the orderly movement of shipments between Tech Data and third parties" is specifically contemplated by the agreement (Dkt. 37 at 10).

Unpersuasive is Plaintiff's argument that the limitation of liability clause is an ambiguous exculpatory clause that cannot be enforced. First, "[a]n exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury." Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP, 832, So. 2d 270, 272 (Fla. 4th DCA 2002) (internal quotation marks and citations omitted). The clause at issue purports to limit FedEx's liability, not deny Plaintiff any recovery. See Rollins, Inc. v. Heller, 454 So. 2d 580, 583-84 (Fla. 3d DCA 1984) (distinguishing between an exculpatory clause and a limitation of damages provision in a contract that contained both). Further, the law regarding damage to goods in interstate transport allows for contractual limitations of liability. See Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1041 (11th Cir. 1990) (stating that the Carmack Amendment allows a carrier and shipper to negotiate to limit the carrier's liability under certain circumstances). Indeed, the Carmack Amendment, upon which Plaintiff relies in support of its contention that it is due the full value of the goods at common law, specifically allows parties to contract to limit a carrier's liability.[5] See id.

In addition, nothing in the Agreement or the record supports Plaintiff's reading that the clause is applicable only when FedEx transports goods directly from Plaintiff to the customer without any intervening stops at transfer facilities or on different trailers. "When the terms of an agreement are unambiguous, this Court's obligation is to enforce the plain language of the contract and consider provisions in accordance with ordinary meaning and not give any meaning beyond that expressed

---

[5] Even if the clause at issue were an exculpatory clause, the wording and intention of the clause is clear and unequivocal. See Sunny Isles Marina, Inc. v. Adulami, 706 So. 2d 920, 922 (Fla. 3d DCA 1998) (a valid exculpatory clause must be clear and unequivocal).

in the contract itself." <u>Kirkland v. Ocean Key Associates, Ltd.</u>, No. 07-10030-CIV, 2007 WL 3343083, *2 (S.D. Fla. Nov. 8, 2007) (citations omitted); <u>see</u> <u>also</u> <u>Duck Dog, L.C. v. Brownstar Props., LLC</u>, __ So. 2d __, 2008 WL 398811, *2 (Fla. 2d DCA 2008) (citations omitted) (contract interpretation is a question of law if the terms are unequivocal, clear, undisputed, and not subject to conflicting inferences); <u>Steritech Group, Inc. v. MacKenzie</u>, 970 So. 2d 895, 898 (Fla. 5th DCA 2007) (citations omitted) (contract interpretation requires that clear and unambiguous terms be given their plain meaning).

The language of the limitation of liability clause is clear and unambiguous. It states that Plaintiff's damages are limited to $5.00 per pound if goods are lost or damaged "in the transportation of goods between Shipper and a third party."  The term "Shipper" unequivocally refers to Tech Data and the term "third party" unequivocally means the recipient of Tech Data's shipped goods. Plaintiff's contention is that the remainder of the clause, "in the transportation of goods between" refers only to FedEx's direct, uninterrupted transport of goods from Tech Data to its customer without any intervening stops or transfers along the transport route. Nothing in the Agreement or the record supports Plaintiff's interpretation of these terms. The ordinary meaning of "in the transportation of goods between" contemplates that FedEx will undertake whatever steps necessary to transport the goods between Tech Data and its customers. The Agreement does not differentiate between direct transport and interrupted transport when addressing the amount of damages due Plaintiff in the event of a loss.  Accordingly, the limitation of liability provision is enforceable against Plaintiff and Plaintiff's damages for the lost Goods are limited to $5.00 per pound absent a finding that FedEx breached Schedule D. <u>See</u> <u>infra</u> pts. B, C.

B.      <u>Breach of Schedule D</u>

The parties agree that the Goods were lost and never delivered to their intended destination but disagree as to whether FedEx breached Schedule D.  Plaintiff contends that the undisputed evidence shows that FedEx breached Schedule D in two ways: by failing to provide timely notice of the loss to Tech Data within forty-eight hours and failing to provide proof of delivery ("P.O.D.") (Dkt. 34 at 11).[6]

With regard to the forty-eight hour notice provision, Schedule D specifically provides in two instances for reporting to the customer within forty-eight hours: (1) "Any discrepancies or corrections must be reported to Customer within 48 hours" under Section 1(a)(ii), and "Counts will be reconciled and exceptions noted with any reporting of discrepancies to Carrier and to the appropriate Customer party within 48 hours" under Section 1(b). (Compl. Attach. 2 at 9, ¶¶ 1(a)(ii) and 1(b))  Plaintiff offers the Affidavits of Tech Data employees Edward Bryant, Shawn Frederick, Sean Osborne, Robert Daley, and David Kervin as evidence that the first notice Tech Data received about the loss was at 6:24 p.m. on January 16, 2006, more than four days after the loss was confirmed by FedEx on January 11, 2006 (Dkt. 34, Attachs. 10, 11, 12, 13, 14).

FedEx responds that it confirmed the loss with Tech Data as early as January 13, 2006 (within the forty-eight hour window required by the Agreement), and as evidence submits the Affidavit of FedEx employee Shannon Chavez ("Chavez Affidavit") and her internal computer screen notes which reflect the January 13, 2006 notation of "working with Shawn at Tech Data" (Dkt. 39; Dkt. 35, Attach. 5).   Plaintiff contends that Ms. Chavez's notes do not reflect that notice was given to the correct persons at Tech Data under the terms of the Agreement (Dkt. 36 at 8).

---

[6] Schedule D, entitled "Carrier Security Requirements," specifically states that Schedule D "relates only to loss and theft." (Compl. Attach 2 at 1)

Because the parties present conflicting evidence on whether FedEx complied with the terms of the Agreement regarding notice, a genuine issue of material fact remains as to this issue.[7]

As for the proof of delivery requirement of Schedule D, the Agreement specifically provides: "Proof of Delivery (P.O.D.) is required to be provided to Customer in any reported shortage, damage or loss. P.O.D. must be received not later than four business days after the request" (Compl. Attach. 2 at 10, ¶ 3)  FedEx contends that the express language of Schedule D requires Tech Data to request proof of delivery before FedEx must provide proof of delivery.  FedEx also argues that proof of delivery can never be provided where, as here, the Goods were lost (Dkt. 37 at 12).  Plaintiff submits that the proof of delivery provision is internally inconsistent and ambiguous because it places the burden on FedEx to provide proof of delivery but also speaks to FedEx providing proof of delivery "after the request" (Dkt. 34 at 12).

Although the proof of delivery provision's ambiguity is raised in the motions for summary judgment, neither party has briefed this issue.  Whether FedEx breached Schedule D depends on the construction of the contractual terms and whether the proof of delivery provision is triggered only in the event that Plaintiff formally requests proof of delivery.

The present record is insufficiently developed to make that determination.  If the clause does not require a formal request, FedEx may be held liable because it admits that it failed to provide proof of delivery and instead provided Plaintiff a delivery receipt showing that the Goods were lost

---

[7] FedEx's argument is unpersuasive that Plaintiff's affidavits are merely self-serving and carry no weight in light of the Chavez Affidavit and her internal computer screen notes. FedEx's evidence is no more credible than Plaintiff's evidence at this stage, and credibility determinations should be resolved at trial and not on summary judgment. See Harris v. Shelby County Bd. of Educ., 99 F.ed 1078, 1084 (11th Cir. 1996) (citation omitted) ("It is the responsibility of the ultimate finder of fact to weigh the evidence and make the appropriate credibility determinations.").

in transit (Dkt. 37 at 12; Attach. 7).  FedEx offers no authority for why the delivery receipt was a sufficient substitute for proof of delivery under the Agreement.  In addition, nothing on the delivery receipt indicates whether or when Plaintiff actually received it.  Further, though FedEx argues that proof of delivery is impossible to provide in a situation where the goods are lost, the Agreement is silent on that issue.

Even if the court accepted FedEx's interpretation that the clause requires a request from Plaintiff before an obligation to provide proof of delivery is triggered, Plaintiff offers the Bryant and Kervin Affidavits as evidence that Tech Data notified FedEx of the loss and requested a proof of delivery investigation.  Kervin stated that Tech Data requested on January 17, 2006 (after learning of the loss on January 16, 2006) that FedEx conduct a proof of delivery investigation, which continued into February 2006 (Dkt. 34, Attach. 10 at ¶¶ 6, 10).  Bryant stated that he asked FedEx on January 17, 2006 to initiate an investigation to determine proof of delivery (Dkt. 34, Attach. 11 at ¶¶ 4, 5).  Although Bryant submits that he did not specifically use the words "proof of delivery" with FedEx, the evidence shows that FedEx was unequivocally aware that by January 17, 2006, Tech Data had reported a loss and requested action by FedEx (Dkt. 34, Attach. 11 at ¶ 5).[8]

Thus, a disputed factual issue remains for trial as to whether FedEx provided proof of delivery in accordance with the Agreement, the outcome of which depends on the proper construction of the clause.  In their proposed findings of facts and conclusions of law for trial, the parties shall brief the issue of the provision's ambiguity and the appropriate construction of the

---

[8] As evidence that Plaintiff did not specifically request proof of delivery, FedEx submits the Chavez Affidavit and internal FedEx computer screen notes, which are both devoid of any notation about a proof of delivery request from Plaintiff (Dkt. 39; Dkt. 35, Attach. 5). However, the absence of evidence demonstrating a proof of delivery request is not dispositive of whether such a request occurred where Plaintiff submits its own evidence to the contrary. See Celotex, 477 U.S. at 324-25.

terms.

Turning to the liquidated damages issue, the parties suggest that deciding the legality of the Agreement's liquidated damages provision is advisable at the summary judgment stage because interpretation of the provision is a pure question of law, which interpretation will conserve judicial resources and effectuate a just and speedy resolution of the case.  Each party takes the position that the clause is either enforceable or unenforceable based on ordinary meaning of the terms and facts that appear without dispute.  Thus, although disputed issues of material fact remain as to whether Schedule D was breached, the court will address this issue.[9]

C.      Whether the Liquidated Damages Clause is Enforceable under Florida Law

Florida law allows parties to contractually stipulate to the amount of damages to be paid or retained in the event of a breach so long as the provision does not serve only to punish the breaching party. MCA Television Ltd. v. Pub. Interest Corp., 171 F.3d 1265, 1271 (11th Cir. 1999) (citations omitted).  A liquidated damages provision will be upheld and not considered a penalty if two conditions are met: (1) the damages resulting from the breach must not be readily ascertainable, and (2) the amount agreed to be forfeited must not be grossly disproportionate to any damages that might reasonably be expected to flow from the breach. Id. (citations omitted); Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000) (citations omitted).  Whether a liquidated damages provision is reasonable must be determined under the particular facts and circumstances of each case. Pembroke v. Caudill, 37 So. 2d 538, 540 (Fla. 1948), overruled in part

---

[9] Resolution of the liquidated damages issue at this stage is keeping with the "affirmative duty . . . to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay."  Fed. R. Civ. P. 1 advisory committee's note; see Fed. R. Civ. P. 1 (construing the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action").

on other grounds by Hutchinson v. Tompkins, 259 So. 2d 129 (Fla. 1972).[10]

Turning to the clause at issue, Paragraph 9 of the Agreement (which also contains the limitation of liability clause) reads:

> Notwithstanding anything contained herein to the contrary, in the event of loss or damage to goods occurring in circumstances in which there was a failure to comply with any of the security requirements of Schedule D, Shipper shall be entitled to recover from Carrier as liquidated damages and not as a penalty, a sum equal to 100% of the invoice value of the affected goods, subject to a maximum of Two Hundred Fifty Thousand Dollars ($250,000) per occurrence.

---

[10] In determining the validity of a liquidated damages clause, some Florida courts have considered one or more of the following factors: (1) whether the clause creates a deterrent to any future breach, (2) whether the clause provides the non-breaching party an alternative method of recovery under the contract, optional remedies, or a right to pursue several remedies at once; (3) whether the clause provides for a mutuality of remedies; (4) the intent of the parties to liquidate damages and not penalize the breaching party; and (5) whether the provision awards payment of the same liquidated sum for a partial or total breach. See generally MCA Television, 171 F.3d at 1271, 1272 (citations omitted); Resnick, 227 F.3d at 1351-52 (citations omitted); Kirkland, 2007 WL 3343083 at *2; Lefemine v. Baron, 573 So. 2d 326, 328, 329 (Fla. 1991) (citations omitted); Humana Medical Plan, Inc. v. Jacobson, 614 So. 2d 520 (Fla. 3d DCA 1992); Seaside Cmty. Dev. Corp. v. Edwards, 573 So. 2d 142, 147 (Fla. 1st DCA 1991) (citations omitted); T.A.S. Heavy Equipment, Inc. v. Delint, Inc., 532 So. 2d 23, 25 (Fla. 4th DCA 1988) (citation omitted).

Although not determinative, several of these factors favor Plaintiff. Paragraph 9 specifically provides that the damages due Plaintiff for a breach of Schedule D are *liquidated damages and not [] a penalty*. (Compl. Attach. 2 at 2, ¶ 9) (emphasis added). The Agreement's express terms reveal that the parties did not intend to induce FedEx's compliance but rather intended to liquidate Plaintiff's damages in the event of a breach. Further, nothing in the Agreement indicates that the non-breaching party is allowed "a choice of options in the event of a breach"; the contract provides no alternative methods for Plaintiff to recover under the contract for a breach of Schedule D. See MCA Television, 171 F.3d at 1272. The stipulated sum is the only agreed upon measure of damages and Plaintiff is not "at risk for damages greater than the liquidated sum." Id. at 1272 (internal quotation marks and citation omitted). Finally, no liquidated damages are awarded to Plaintiff if no loss occurs; Schedule D specifically states that it applies "only to loss and theft." (Compl. Attach. 2 at 9). Thus, FedEx is not subject to the same penalty regardless of the level of breach—FedEx must breach Schedule D *and* the goods be lost to trigger the liquidated damages clause. Cf. Resnick, 227 F.3d at 1352 (citations omitted) (reasoning that the liquidated damages provision was a penalty intended to induce performance because the defendant was subject to the same penalty regardless of the severity of the breach).

19

(Compl. Attach. 2 at 2, ¶ 9)

FedEx contends that Plaintiff's damages were precisely quantified (and thus readily ascertainable) at the time the Agreement was executed because one hundred percent of the Goods' invoice value is the total amount of damages that Plaintiff could seek at common law. FedEx's position is unpersuasive. Nothing in the Agreement suggests that the parties could forecast on November 4, 2002 the actual damages that would result from a loss of each future shipment (individually or in the aggregate), especially for a shipment that occurred more than three years after the Agreement was signed, as in this case. Indeed, the Agreement contemplated that Plaintiff would engage FedEx's services for numerous shipments of Tech Data's products.[11] (Compl. Attach. 2 at 2, ¶ B) Absent from the Agreement is any contractually assigned value for each future shipment or any standard value for goods that Plaintiff expected to ship under the contract (or any estimation of the aggregate value of all the goods Plaintiff expected to ship during the life of the contract). It follows that the Agreement was intended to cover shipments of varying values. Thus, at the time of contract formation the parties could not reasonably ascertain the value of future goods Plaintiff would ship under the contract or the damages that would arise from the loss of such goods.[12]

---

[11] The Agreement was a three-year contract automatically renewable for one-year increments at the natural end of the contractual term (Compl. Attach. 2 at 1, ¶ 1) When the Goods were lost, the Agreement had been in effect for more than three years.

[12] Although FedEx relies on Humana Medical Plan, Inc. v. Jacobson, 614 So. 2d 520 (Fla. 3d DCA 1992), in support of its position that Plaintiff's damages were readily ascertainable at the time of contract formation, the facts in Humana are distinguishable. In declaring the liquidated damages clause a penalty, the Humana court specifically noted Humana's ability to anticipate the revenues and expenses it would incur in the event of a loss, forecast its revenues per medicare patient enrolled as well as its expenditures required per patient, and specifically use empirical data to calculate the purchase price of its predecessor's assets. Id. at 522. Unlike the facts in Humana, nothing here supports the parties' ability to anticipate or accurately quantify at the time the Agreement was signed damages that could result if FedEx breached Schedule D and goods were lost.

20

Further, a damages award amounting to the invoice value of the goods is "not so grossly disproportionate to any damages that might reasonably be expected to flow from a breach of [Schedule D] so as to show that the parties intended only to induce full performance." Lefemine, 573 So. 2d at 328 (citation omitted). Although FedEx submits that the damages reasonably expected to flow from the breach are contractually limited to $5.00 per pound, the express terms of the Agreement reveal that the reasonably expected damages flowing from a breach of Schedule D are the invoice value of the lost goods. The plain language of Paragraph 9 expressly states that a breach of Schedule D implicates the liquidated damages clause notwithstanding anything in Paragraph 9 to the contrary. (Compl. Attach. 2 at 2, ¶ 9) Because the Agreement's terms are unambiguous, the parties expressly intended to exclude the damages available under the limitation of liability clause (in this case, $525.00) in contracting for the damages available for a breach of Schedule D. Thus, the damages reasonably expected to flow from a breach of Schedule D were no more than the damages that Plaintiff could seek at common law.

That the sum awarded under the liquidated damages clause (the invoice value) is therefore equal to the damages reasonably expected to flow from the breach of Schedule D does not render the two "grossly disproportionate." "[L]iquidated damages may or may not precisely compensate for the actual breach," so long as the disparity between the liquidated damages sum and the damages amount that contract law would normally allow is not "so great as to compensate minimal damages with substantial sums." Resnick, 227 F.3d at 1351 (citation omitted); see also Doc's Junkie Musick, Inc. v. Active Alarms, Inc., 545 So. 2d 500, 501 (Fla. 4th DCA 1989) (upholding a liquidated damages clause where upon breach, the entire remaining balance of the contract price was immediately payable to the non-breaching party). The parties contracted for a $250,000 ceiling on

liquidated damages that could be awarded under the clause; Plaintiff was not using the liquidated damages provision to secure "greater damages in the event of a breach than contract law would normally allow." MCA Television, 171 F.3d at 1271.

FedEx also submits, without supporting legal authority, that the liquidated damages provision is unenforceable because it provides for absolute liability irrespective of whether FedEx's breach of Schedule D was the cause of the loss.  In  Humana, the liquidated damages clause was held unenforceable because the defendant was penalized regardless of whether the defendant acted to cause Humana's loss.  Humana, 614 So. 2d at 523.  In contrast, the liquidated damages clause here is implicated only if FedEx breaches Schedule D and the goods are lost; absent a breach (and a concurrent loss of goods), FedEx is not liable under the liquidated damages clause.  Thus, FedEx's conclusory argument that the liquidated damages provision imposes absolute liability, without more, is without merit.

Accordingly, the contractual clause awarding Plaintiff the invoice value of the goods in the event that FedEx breaches Schedule D is an enforceable liquidated damages clause and not a penalty. The clause is enforceable in the event that Plaintiff proves by a preponderance of the evidence that FedEx breached Schedule D.

## V.    Conclusion

The limitation of liability clause is enforceable against Plaintiff and the liquidated damages clause is enforceable against FedEx under Florida law.  Accordingly, Plaintiff is limited to damages in the amount of $5.00 per pound for the lost Goods unless Plaintiff proves by a preponderance of the evidence that FedEx breached Schedule D, thereby invoking the liquidated damages clause. Plaintiff contends that FedEx breached Schedule D in two ways: by failing to timely notify Plaintiff

of the loss and by failing to provide proof of delivery.  Because genuine issues of material fact exist about whether breach occurred, summary judgment is inappropriate as to the issue of breach.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     Plaintiff's Motion to Strike portions of the Willis Affidavit (Dkt. 36) is **GRANTED** to the extent that Paragraphs 6, 8, and 15 are stricken and the motion is otherwise **DENIED**;

(2)     Plaintiff's Motion for Summary Judgment (Dkt. 34) is **GRANTED** to the extent that the court finds the liquidated damages clause enforceable against Defendant and the motion is otherwise **DENIED**; and

(3)     Defendant's Motion for Summary Judgment (Dkt. 35) is **DENIED** except as provided in this order.

**DONE AND ORDERED** in Tampa, Florida on this 23rd day of July, 2008.


ELIZABETH A JENKINS
United States Magistrate Judge

23